IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 17-651 |
| AMEEN GREEN a.k.a. "SHOOTER," and | : | |
| RICHARD WINN | : | |

**MEMORANDUM**

**SURRICK, J.**  MARCH 28, 2018

Presently before the Court are Defendants' Motions for a *Franks* Hearing and to Suppress Physical Evidence and Statements. (ECF Nos. 38, 39.) For the following reasons, Defendants' Motions will be **DENIED**.

**I.   BACKGROUND**

On December 20, 2017, a grand jury returned an Indictment charging Defendants Richard Winn and Ameen Green a/k/a "Shooter" with possession with intent to distribute, and aiding and abetting the possession with intent to distribute, crack cocaine, heroin, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and 18 U.S.C. § 2. (Indictment, ECF No. 1.) Defendants are also charged with possessing, and aiding and abetting the possession of, a Taurus International 9mm semi-automatic pistol, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 2 and 924(c)(1). (*Id.*) In addition, each defendant is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (*Id.*) Winn and Green now move to suppress all evidence seized at 1208 West Venango Street, Philadelphia, Pennsylvania, pursuant to a search warrant issued by a state magistrate. Defendants have also

moved for a *Franks* hearing, contending that the officer whose affidavit upon which the warrant application was based deliberately, or with reckless disregard for the truth, omitted information from the affidavit that created a falsehood material to the finding of probable cause. Defendants further move to suppress the physical evidence seized at 1208 West Venango, arguing that the information supporting the warrant was stale. Defendant Green also moves to suppress statements that he made after the search and seizure at 1208 West Venango.

A.  **Factual Background**

On September 14, 2017, Philadelphia Police Detective John McNamee filed an affidavit of probable cause in support of a search and seizure warrant. (Winn Mot., Ex. 1., ECF No. 39.) The affidavit describes a series of events that led Detective McNamee to believe that a gun used to commit a murder, clothing worn by the suspected murderer, and evidence of a related drug dealing operation, would be found at 1208 West Venango.

The affidavit provided that on Thursday, September 7, 2017, a 38-year-old white male was shot in the head at 1512 Melon Street in Philadelphia, and that he subsequently died from the gunshot wounds. (*Id.*) Surveillance footage recovered during the course of the shooting investigation revealed that two black men were the apparent killers. (*Id.*) Black male #1 approached the victim as he exited his car while black male #2 trailed close behind. (*Id.*) Black male #1 then pointed a handgun at the victim, took his personal property, and led the victim away from his car and shot him twice. (*Id.*)

In the footage, black male #1 can be seen wearing a dark hooded sweatshirt with a white stripe down the sleeves, light-colored pants, and tan and black sneakers with white stripes. (*Id.*) Black male #2 can be seen wearing a dark-hooded sweatshirt, blue jeans, and black sneakers with white trim. (*Id.*)

2

The affidavit provided that police investigation, including physical evidence collection, interviews, and identifications by both police and civilian witnesses, led to black male #1 being identified as Marvin Roberts, and black male #2 being identified as his brother, Maurice Roberts. (*Id.*)

According to the affidavit, Marvin Roberts was located by police on the morning of September 9, 2017, while he was walking eastbound on Venango Street between Broad Street and 13th Street. (*Id.*) Marvin was taken into custody, advised of his *Miranda* rights, and then interviewed by police. (*Id.*)

The affidavit contains Detective McNamee's summary of Marvin Roberts's interview. (*Id.*) Marvin admitted to robbing and shooting the victim. (*Id.*) Roberts obtained the gun used in the shooting "from a male that sells drugs in the area of his arrest," and that "one of the drug dealers is named 'Relleo.'" (*Id.*) Detective McNamee noted that no one named Relleo had been identified during the course of the investigation. (*Id.*) While being interviewed, Marvin's cell phone received several incoming calls from a number listed in the phone's contacts as "Deuce," who Marvin said was an associate of his. (*Id.*)

Maurice Roberts was arrested in Mt. Olive, New Jersey on September 9, 2017, and after being advised of his *Miranda* rights he was interviewed at the Mt. Olive police station. (*Id.*) The affidavit provides Detective McNamee's summary of Maurice's interview. (*Id.*) Maurice admitted to his participation in the robbery and shooting, and also admitted that his brother was the shooter. (*Id.*) He told the police that his brother worked as a drug dealer for a man known as Deuce and another man known as Shooter. (*Id.*) The affidavit states that that Maurice "is aware that the gun used in the murder was provided by either Deuce or Shooter because he is aware that they both carry guns and use them" in the course of selling drugs. (*Id.*) Maurice also stated that

3

"the weapon used in the murder was returned to either Deuce or Shooter after the murder occurred." (*Id.*)

On September 14, 2017, Maurice Roberts was extradited to Philadelphia and arraigned. (*Id.*) Maurice then requested to speak with detectives, was brought to the Homicide Unit, advised again of his *Miranda* rights, and submitted to an interview. (*Id.*) Detective McNamee, summarizing this interview, states in the affidavit that Maurice said "he is aware of a house used by two drug dealer [sic] named Deuce and Shooter," and that "he knows that Deuce and Shooter used the house that he described as a 'trap house' to sell drugs from, store drugs and hide and store guns." (*Id.*) Maurice stated that he had been in the house as recently as two weeks prior to the interview, and that he had recently seen both drugs and guns in the house. (*Id.*) Maurice also said that he has previously seen Marvin inside of that house and that Marvin has access to the house. (*Id.*)

Maurice described the trap house as a brick house with a white door located near 12th or 13th Street and Venango, and said that the house is located on Venango Street. (*Id.*) The detectives showed Maurice street view maps of the 1200 block of West Venango Street, and Maurice identified 1208 West Venango Street as the trap house he had described.

The affidavit concludes with Detective McNamee stating that it is his belief that Marvin Roberts had been in 1208 West Venango Street in the days after the murder and was traveling to that location when he was stopped and taken into custody on September 9, 2017. (*Id.*) He declared his belief that 1208 West Venango would contain illegal narcotics, guns, weapons, and the clothing and personal effects of Marvin Roberts, and that he was applying for a warrant to lawfully collect those items for use in the investigation into the robbery and shooting on September 7, 2017. (*Id.*)

4

On September 14, 2017, based on this affidavit, the magistrate issued a warrant to search 1208 West Venango. (Gov't Resp. 9, ECF No. 43.) The warrant was executed the next day on September 15, 2017. (*Id.*) After a knock and announce with no reply, Philadelphia Police Officers and Homicide Detectives breached the door and found Richard Winn in the living room and Ameen Green in the upstairs middle bedroom of the house. (*Id.*) A search of the house led the police to find a large amount of drugs and drug paraphernalia sitting out in the open in the main living area, kitchen, and bedrooms. (*Id.*) Officers seized plastic bags containing heroin, crack cocaine, and synthetic marijuana. (Winn Mot. Ex. 2.) Many of the drugs were packaged for distribution in small packets with glassine inserts. (*Id.*) Officers also seized three digital scales, eight cell phones, branded zip lock bags, boxes of branded glassine inserts and rubber bands, along with "glass plate bulk crystal meth." (*Id.*) Over $1,300 of United States Currency was also seized, as well as a key to the front door of the property with a red name tag bearing the inscription "RICHARD." (*Id.*) Finally, the police also seized a black Taurus Model PT709 9mm handgun containing a magazine loaded with six live rounds, a silver and black Smith & Wesson Model SW9VE 9mm handgun with a magazine, and a clear plastic bag containing eight live 9mm rounds. (*Id.*)

### B. Procedural Background

Defendant Green filed an Omnibus Motion arguing for the suppression of physical evidence and statements on March 6, 2018. (Green Mot. ECF No. 38.) Defendant Winn filed a Motion for a *Franks* Hearing and a Motion to Suppress Evidence on March 10, 2018. (Winn Mot.) The Government filed a Response to both Motions on March 15, 2018. (Gov't Resp.) On March 19, 2018, a hearing was held on the Motions. (Mar. 19 Hr'g Tr. (on file with Court).) At the hearing, Green's Motion for Joinder in Winn's Motion was granted.

5

## III. DISCUSSION

### A. Standing

Addressing first the issue of Fourth Amendment standing, the Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. In order to assure this guarantee, evidence obtained in violation of the Fourth Amendment may be excluded at trial. *United States v. Calandra*, 414 U.S. 338, 347 (1974). However, a defendant may only get the benefit of the Fourth Amendment's exclusionary rule if the defendant's own Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) (citing *Rakas v. Illinois*, 439 U.S. 128, 132-34 (1978)). Proponents of a motion to suppress bear the burden of proving not only that the search was illegal, but also that they had a legitimate expectation of privacy in the place searched. *Stearn*, 597 F.3d at 551.

Residents of a property have a legitimate expectation of privacy in their residence. *United States v. White*, 748 F.3d 507, 511 (3d Cir. 2014) ("The Fourth Amendment draws 'a firm line at the entrance to the house'" (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980))). Overnight guests also have a legitimate expectation of privacy in their host's home. *Minnesota v. Olson*, 495 U.S. 91, 98-100 (1990).

Here, both Winn and Green contend that for the purposes of these Motions they were at least overnight guests at 1208 West Venango, if not residents. The Government does not argue that the Defendants lack standing. Accordingly, both Green and Winn have standing to seek suppression of the evidence seized from 1208 West Venango.

### B. *Franks* Analysis

Defendants move to suppress evidence recovered pursuant to the warrant for 1208 West Venango on the basis that the affidavit in support of the warrant contained false statements which were material to the finding of probable cause.

i.   *Legal Background*

"[N]o Warrants shall issue but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Supreme Court has declared that this "Warrant Clause" is the "bulwark of Fourth Amendment protection." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). As such, the Court has held that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (discussing *Franks*).

There is a two-step process by which a criminal defendant can make such a challenge. First, in order to be eligible for a *Franks* hearing, the defendant must overcome the presumption that affidavits supporting search warrants are valid. *Franks*, 438 U.S. at 17. The defendant must make a "substantial preliminary showing" that the affidavit contained a false statement, made knowingly or with reckless disregard for the truth, which was material to the magistrate's finding of probable cause. *United States v. Yokshan*, 658 F. Supp. 2d 654, 659-60 (E.D. Pa. 2009) (citing *Yusuf*, 461 F.3d at 383). The defendant must present an offer of proof contradicting the affidavit, such as sworn affidavits or otherwise reliable witness statements, and is precluded from relying on conclusory statements or a mere desire to cross-examine. *Id.* at 660 (citations and quotations omitted).

The Third Circuit has established a standard for determining whether statements and/or omissions were made with a reckless disregard of the truth:

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless

7

disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Yusuf*, 461 F.3d at 383 (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)). A mere showing of negligence or innocent mistake is insufficient to find reckless disregard for the truth. *Id.* at 787. However, where there is an "absence of sufficient grounding to support an averment ..., a court [may] infer that an affiant acted with reckless disregard for the truth." *United States v. Jackson*, No. 16-218-3, 2018 WL 500983, at *5 (E.D. Pa. Jan. 22, 2018) (citation omitted).

Second, if the defendant successfully establishes that a *Franks* hearing is necessary, he must then "prove by a preponderance of the evidence: '(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination.'" *Yokshan*, 658 F. Supp. 2d at 660 (quoting *Yusuf*, 461 F.3d at 383).

Ultimately, the defendant must prove by a preponderance of the evidence that a hypothetical corrected affidavit does not support a finding of probable cause. *Id.* at 660. The court must excise any affirmatively false statements from the affidavit, and as for omissions, the court must remove the falsehood created by an omission by supplying the omitted information to the original affidavit. *Id.* (citing *Yusuf*, 461 F.3d at 384).

  ii. *Application*

Defendants have not made a substantial preliminary showing that the affidavit of Detective McNamee contained a false statement or omission which was material to the finding of probable cause. Defendants primarily argue that the affidavit omitted statements from Marvin Roberts's interview that were subsequently proven to be false through police investigation and

8

were contradicted by statements made by his brother, Maurice. These omissions did not create a falsehood in the affidavit. To the contrary, the police investigation corroborated those statements made by Marvin and Maurice which were true and disproved those which were false, and the affidavit only included those which were corroborated as true.

    a.    <u>15th and Erie Statements</u>

The first omission Defendants argue should have been included in the affidavit are the statements made by Marvin Roberts about where he obtained the murder weapon. During the interview on September 9, Marvin claimed he got the gun used in the murder from a drug dealer named Relleo at 15th and Erie, and that he returned it to the same location after the murder. (Winn Mot. ¶ 40.) This address was not included in the affidavit, but instead the affidavit states that Marvin got the gun "from a male that sells drugs in the area of his arrest." (Winn Mot. Ex. 2.) Defendants argue this is an intentional misrepresentation by Detective McNamee to shift the focus of the warrant to 1208 West Venango and away from another possible location at 15th and Erie. We disagree.

First, 15th and Erie is only 2-3 blocks away from where Marvin was arrested. (Gov't Mot. 28.) Describing that geographical region as "in the area" is not a misrepresentation. Moreover, Marvin was only a block away from 1208 West Venango, and he was walking in the direction of that location, when he was arrested. This omission does not create a falsehood, nor is it misleading.

As the Government makes clear, the police investigated the location of 15th and Erie based on Marvin's statements and concluded he had lied to them about it being the house where he obtained the gun from the alleged drug dealer Relleo. Defendants argue that the affidavit omitted the 15th and Erie location in order to strengthen the probable cause argument to search

9

1208 West Venango, but what they are actually arguing is that the affidavit should have included claims made by Marvin that were proven false by police during the course of their investigation. They cite no legal authority supporting the notion that police should include such statements in affidavits in support of probable cause, and we are aware of none. Frankly, this argument makes no sense, as it would lead to the affidavit containing objectively false information. Defendants appear to be arguing that Detective McNamee should have included those false statements by Marvin, and then also included an explanation of how the investigation had disproven them. That is a proposition unsupported by law. Defendants admit that Marvin was, "in actuality, likely lying ...." (Winn Mot. P 83.) The omission of Marvin Roberts' disproven statements about 15th and Erie being the location of the house where he obtained the murder weapon did not create a material falsehood in the affidavit.

   b.  19th and Erie Statements

The second omission that Defendants argue should have been included in the affidavit is similar to the first. During his interview, Marvin said he slept at a trap house the night of the murder. He described the physical appearance of the house. He also said he had thrown the clothes he was wearing during the murder into the sewer, and that he hid the sneakers he wore during the murder in a radiator in the basement of the trap house. He told the police the location of this house was 19th and Erie. (Winn Mot. ¶ 49.) This address and the statements about the sewer and the sneakers were not included in the affidavit.

Similar to the 15th and Erie statements, the 19th and Erie statements omission did not create a material falsehood in the affidavit, because that location was proven to *not* be the actual address of the house Marvin described. As the Government explains, Marvin first told the police he had thrown his sneakers down a sewer, but when the police threatened to seize the sneakers he

10

was wearing during the interview, Marvin changed his story and said he had hidden the sneakers in a radiator in the basement of the trap house where he had slept the night of the murder. (Gov't Mot. 25-26 n. 17.) Marvin described the house's appearance in detail, and when pressed for an address, he said it was located at 19th and Erie. (*Id.*) Police went to the location, spoke to the individuals at that house, investigated the basement, found no radiator, and determined that it could not have been the house Marvin described. (*Id.*) Moreover, the house described by Marvin matched the physical description of the trap house identified by Maurice, the house at 1208 West Venango.

The omission in the affidavit of Marvin Roberts's statements about the 19th and Erie location and the alleged locations of the clothes and sneakers, which were proven false by subsequent police investigation, did not create a material falsehood in the affidavit.

    c.    <u>Knowledge Basis of Maurice Roberts's Statements</u>

Defendants also argue that Detective McNamee's affidavit overstates the reliability of the information provided by Maurice Roberts as to the location of the murder weapon, because this was a "belief" held by Maurice, rather than first-hand knowledge.

Maurice stated that he had recently been in the trap house at 1208 West Venango, that he had seen his brother there, that his brother had access to it, that it was the trap house used by Defendants to store guns and drugs, and that he had seen guns and drugs in that same house. Defendants argue that he stated in his interview that he "believed" his brother obtained the gun from Deuce and Shooter, and that the gun "should be" at 1208 West Venango Street because "his brother told him he was going to return the gun to Deuce and Shooter after the murder." (Winn Mot. ¶ 66.)

Defendants' characterization of the affidavit's summary of Maurice's statements does not rise to the level of a material omission. The affidavit states that Maurice had participated in the murder, that he knew his brother sold drugs for Deuce and Shooter, that Deuce and Shooter had a trap house at 1208 West Venango to which his brother had access, recently, and that he knew the gun was returned to Deuce or Shooter after the murder. Most of this information was first-hand knowledge, as Maurice explicitly said he had been in the trap house and had seen his brother there, along with guns and drugs. Inserting the words "believe" or "should" in front of the statements about the location of the gun has no material effect on the meaning or import of these statements. Taking Defendants' argument at face value, the affidavit *does* include a qualifier as to Maurice's basis of knowledge, stating that he is "aware" of how Marvin obtained the gun. Finally, the affidavit does not state that Maurice saw the gun returned to Deuce or Shooter, only that he knows it was returned to them. Considering the level of Maurice's first-hand knowledge regarding the trap house and its contents as recounted in the affidavit, Defendants' argument is silly.

d. *Franks* Conclusion

Defendants have failed to put forth a substantial preliminary showing that the purported omissions were material to a finding of probable cause. Defendants have essentially argued, unpersuasively, that the affidavit should have contained statements by Marvin Roberts from his interview which were proven to be false by subsequent investigation. Their proposed hypothetical affidavit inserting these statements highlights the problem with their argument. While their version of the affidavit contains Marvin's statements about 19th and Erie and 15th and Erie, it does not contain the details of how the investigation disproved those statements, nor does it contain the corroboration of Marvin's truthful statements with those statements made by

12

Maurice, *i.e.*, it leaves out how the police did their jobs, conducted an investigation, determined which facts were likely to be true, and included those pertinent facts in the affidavit of probable cause while leaving out those statements which were proven false. If Detective McNamee had decided to include the disproven statements as well as the investigative details explaining how they were disproved, the affidavit certainly would have been much longer, but it would have had no effect on the determination of probable cause.

Accordingly, Defendants have failed to establish their eligibility for a *Franks* hearing, and their *Franks* Motion will be denied.

C. **Probable Cause Determination**

Defendants argue that the information provided in the affidavit by Maurice regarding the 1208 West Venango location was stale and therefore could not support a determination of probable cause for a search warrant.

With a few exceptions, the Fourth Amendment requires law enforcement officers to obtain a search warrant supported by probable cause before they may lawfully search a person's home. *United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002) (citing *Payton*, 445 U.S. at 586). Where, as here, a magistrate has made a probable cause determination and issued a search warrant, the duty of the reviewing court is *not* to determine whether there was in fact probable cause to issue the warrant, but whether the magistrate had a substantial basis for concluding that probable cause existed. *Stearn*, 597 F.3d at 554 (citing *Illinois v. Gates*, 462 U.S. 213, 236-39 (1983). If the court finds that there was a substantial basis to support the magistrate's probable cause finding, it must uphold that finding. *Id.* This is not a license to merely rubber-stamp the magistrate's conclusions, but is instead a process guided by the deference accorded to warrants in close-call cases. *Id.* (citation and quotation marks omitted). The reviewing court's

circumscribed duty means it may only consider those facts that were before the magistrate, *i.e.*, the facts contained in the affidavit of probable cause. *United States v. Herrera*, No. 15-22, 2015 WL 3536616, at *4 (E.D. Pa. June 5, 2015) (citing *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)).

Probable cause has no set definition. It is best conceptualized as a fluid concept determined by the totality of the circumstances in a given context. *Id.* In the context we have here, where a magistrate has been presented with an application for a search warrant, the magistrate may find probable cause if the totality of the circumstances set forth in the affidavit supports "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citing *Gates*, 462 U.S. at 238)). This is not a formulaic calculation, but instead should be a practical, common-sense decision. *Stearn*, 597 F.3d at 554.

Stale information may preclude a finding of probable cause, but the nature of the crime and type of evidence presented, rather than merely the age of the information, must be considered in making such a determination. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). The Third Circuit has explained that "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance." *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005) (internal citations omitted). The protracted and continuous nature of narcotics operations, such as those allegedly engaged in by the Defendants, extend the shelf life of information in determining staleness. *See, e.g., United States v. Ritter*, 416 F.3d 256, 263 (3d Cir.2005) (upholding a finding of probable cause based on observation of narcotics activity that occurred seven months earlier because the

later search involved a similar type of narcotics offense and the initial tip established an identifiable pattern of activity).

We are satisfied that Maurice Roberts's statements about 1208 West Venango contained in the affidavit were not stale.

First, Defendants cite no case establishing a window for determining staleness under circumstances similar to these facts.

Second, they attempt to characterize Maurice's information regarding 1208 West Venango as two-weeks old. That is not correct. Maurice's first interview on September 9, two days after the murder, alleged ties between Marvin and Deuce and Shooter. Maurice's second interview on September 14 resulted in the identification of 1208 West Venango as the trap house used by Deuce, Shooter, and Marvin, and as the likely location of the murder weapon. Given that the murder occurred on September 7, and Marvin could not have returned the weapon to that location until at least some point after that, the information in the affidavit supporting probable cause to search 1208 West Venango was, at most, one week old.

Finally, while Defendants argue that this was a "one-shot type of crime," the affidavit explicitly details the existence of an ongoing criminal drug dealing operation based out of 1208 West Venango, and it alleges a significant nexus between that operation and the murder weapon. Even if the information was as old as the Defendants argue (a mere two weeks), they cite no case to support the proposition that two-week old information is stale when it relates to an ongoing drug dealing operation, and as discussed above, the case law clearly supports the extension of the shelf-life of information when it relates to an ongoing operation such as the one described by Maurice and recounted in the affidavit.

Accordingly, the information regarding 1208 West Venango in the affidavit was not stale. The totality of the circumstances described in the affidavit provided a substantial basis for the magistrate to conclude that probable cause existed, and so we must uphold that finding.

### D. Good Faith Exception

Even if one were to somehow conclude that the magistrate here lacked a substantial basis for finding probable cause, the evidence obtained from the search of 1208 West Venango would be admissible under the "good faith exception" to the exclusionary rule.

The good faith exception attempts to balance the exclusionary rule's costs against its deterrent benefits by not excluding evidence where officers acted with an objectively reasonable belief that their conduct did not violate the Fourth Amendment. *Stearn*, 597 F.3d at 560 (citing *United States v. Leon*, 468 U.S. 897, 918 (1984)).

Ordinarily, if an officer obtains a search warrant and executes it with the good faith belief that he was acting in accord with the Fourth Amendment, a court should not suppress evidence seized under that warrant's authority even if that warrant is subsequently invalidated. *Id.* (citing *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002)). However, if a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization," then the evidence would still be suppressed. *Id.*

The Third Circuit has identified four situations where this exception to the exception would come into play. An officer's reliance on a warrant is unreasonable and therefore does not trigger the good faith exception: (1) when the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable; or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *United States v. Zimmerman*, 277 F.3d 426, 436-37 (3d Cir. 2002).

Defendants have contended, by way of their *Franks* argument, that the magistrate here issued the warrant in reliance on a deliberately or recklessly false affidavit. We have rejected that argument as discussed above. Defendants make no other arguments here against the good faith exception, and we are aware of none.

Accordingly, we are satisfied that a reasonable officer acting in good faith would believe that the warrant here was based on an affidavit that supported a finding of probable cause. Therefore, the evidence found at 1208 West Venango would be admissible under the good faith exception even if one were to conclude that the magistrate lacked a substantial basis to find probable cause to issue the search warrant.

### E. Green's Motion to Suppress of Statements

Defendant Green separately argues that statements he made at the time of the arrest and in a subsequent interrogation should be suppressed as the fruit of the poisonous tree, *i.e.*, they were the result of the unlawful search and seizure executed pursuant to the warrant for 1208 West Venango.

Green's three-sentence argument relies solely on the arguments made by himself and Winn against the affidavit in support of the warrant. As we have found that the affidavit was free from deliberate or reckless falsehoods, there is no poisonous tree here, and thus no poisonous fruit. The Government notes that Green has conceded that he was properly advised of his *Miranda* rights and validly waived those rights when he elected to speak with the detectives. (Gov't Resp. ¶ 41 n. 21.)

Accordingly, Green's Motion to Suppress Statements is denied.

## IV. CONCLUSION

For these reasons, Defendants' Motion for a *Franks* Hearing and to Suppress Physical Evidence, as well as Green's Motion to Suppress Verbal Statements, will be denied.

An appropriate Order follows.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.